IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 24–cv–02265–MDB

KATHLEEN S. SULLIVAN,

    Plaintiff,

v.

WALMART INC.,

    Defendant.

---

# ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment. (["Motion"], Doc. No. 20.) Plaintiff filed a response in opposition to the Motion (["Response"], Doc. No. 22) to which Defendant has replied (["Reply"], Doc. No. 25.) After reviewing the Motion, briefing, and relevant law, the Court **ORDERS** that the Motion is **DENIED**.

## BACKGROUND

The following is undisputed by the parties unless otherwise noted.

On August 12, 2022, Plaintiff visited the Walmart store located at 707 S. 8th St, Colorado Springs, CO 80905. (Doc. No. 25-1 at ¶ 2.) At the time of Plaintiff's visit, Defendant was a "landowner" and Plaintiff was an "invitee" as defined by the Colorado Premises Liability Act ("PLA"). (*Id.* at ¶¶ 1, 3); *see* C.R.S. § 13-21-115. During her visit, Plaintiff slipped and fell while walking through Defendant's pharmacy queue, causing injury. (Doc. No. 25-1 at ¶ 6.)

At 6:42:30 PM of the pharmacy queue security footage, the video shows an unknown shopper being helped at the pharmacy counter, walk back to her cart, forcefully move the items in her cart to look through them, knock over—and then pick up—a black cylindrical object,[1] and then walk around her cart to briefly look at the floor below her cart, all while in the pharmacy queue. (Doc. No 25-1 at ¶ 4 (citing Exhibit A (surveillance video) at 6:42:30).) At 6:47:09 PM, Plaintiff slipped on a clear liquid in the pharmacy queue where the unknown woman's cart had been. (*Id.* at ¶ 6 (citing Exhibit A at 6:47:09).) Plaintiff was not aware of the liquid on the floor prior to her fall. (*Id.* at ¶ 10 (citing Exhibit B (Plaintiff's deposition) at 46:18–20).)

There were Walmart employees behind the pharmacy counter throughout the security footage. (*Id.* at ¶ 14.) The employee helping the unknown shopper is Rebekah Martin, and she completed a witness statement saying the shopper did not tell her about liquid on the floor. (*Id.* at ¶ 12–13 (citing Exhibit C[2] (employee witness statements) at 3.) Another employee, Mitchell Mayer, completed a witness statement saying, "a couple of people spilled water on the floor unbeknownst to anyone else ... [and] did not tell anyone so it could be guarded and cleaned." (*Id.* at ¶ 13 (citing Exhibit C at 3).)

---

[1] Defendant calls this object a "cup." (Doc. No. 25-1 at ¶ 4.) Plaintiff "disagrees" that the footage "clearly shows the woman pick up a cup." (*Id.*)

[2] Defendant submitted Exhibit C with its Reply rather than its Motion. In general, "issues raised for the first time in a reply brief are not considered with an exception for new issues raised in reply to the respondent's arguments." *Black & Veatch Corp. v. Aspen Ins. (Uk) Ltd.*, 378 F. Supp. 3d 975, 989 (D. Kan. 2019). Here, though she did not submit it into evidence—Plaintiff raised and quoted Ms. Martin's witness statement in her Response. As such, Plaintiff opened the door to Defendant's submission of the witness statements on Reply. Moreover, there is no indication that Plaintiff objects to the witness statements, nor has Plaintiff requested to file an additional brief in response to this evidence. Accordingly, the Court considers the witness statements.

Plaintiff brings a single claim for relief, alleging Defendant breached its duty of care under the PLA. (Doc. No. 4 at 2.)

**LEGAL STANDARD**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (quoting Anderson, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return

3

a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the Court to make unreasonable inferences in favor of the nonmoving party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

### I. The Use of the Security Footage

Before making any substantive arguments, Plaintiff first objects to the use of the video footage in resolving the Motion. According to Plaintiff, "the plain language of F.R.C.P. 56(c) does not allow the Court to consider anything other than the pleadings, depositions and written discovery." (Doc. No. 22 at 4–5.) This is incorrect.

Under Rule 56(c), a court may consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or *other materials*." Fed. R. Civ. P. 56(c) (emphasis added). There is no question that "other materials"

4

"include video evidence," such as the security camera footage introduced by Defendant. *Dispenza v. City of New York*, 2023 WL 11845608, at *6 (E.D.N.Y. Mar. 7, 2023); *see, e.g.*, *Naylor v. Washington Metro. Area Transit Auth.*, 2024 WL 1721080, at *4 (D. Md. Apr. 22, 2024) ("The Court may properly consider the video under Rule 56(c)."); *Charlemagne v. Alibayof*, 2022 WL 1642299, at *2 (S.D. Fla. Apr. 29, 2022) ("[T]he Court may consider the surveillance video at summary judgment."); *see also Rowell v. Bd. of Cnty. Commissioners of Muskogee Cnty., Oklahoma*, 978 F.3d 1165, 1171 (10th Cir. 2020) (saying that at summary judgment stage a court "cannot ignore clear, contrary video evidence in the record depicting the events as they occurred." (quoting *Carabajal v. City of Cheyenne, Wyo.*, 847 F.3d 1203, 1207 (10th Cir. 2017)); *Est. of Harmon v. Salt Lake City*, 134 F.4th 1119, 1122 (10th Cir. 2025) ("If the events are conclusively shown in the recordings, we rely on the recordings to determine the facts."). In short, the security footage may be properly considered at summary judgment.

Plaintiff also argues in conclusory fashion, that "[t]he video is unauthenticated and is hearsay." (Doc. No. 22 at 5.) However, the soundless surveillance video documenting actions and events is not hearsay. *Bean v. Costco Wholesale Corp.*, 561 F. Supp. 3d 915, 920 (E.D. Cal. 2021) (finding the conduct shown in a slip and fall surveillance video was not hearsay); *see also Cabrera v. Wal-Mart Stores E., L.P.*, 2017 WL 5643225, at *2 (D.N.M. July 31, 2017) (denying a motion in limine to bar surveillance camera footage in a slip-and-fall case where the "Plaintiff ha[d] not explained how exactly the video fits within the definition of hearsay," and "[t]here [was] no indication that the video contains a statement or assertion by any person, whether verbal or through non-verbal conduct"); *Charlemagne*, 2022 WL 1642299, at *2 ("[A] soundless video does not qualify as hearsay."). As the *Bean* court succinctly explained, only "conduct which can

5

be said to have been intended as 'communicative' can be a statement and, thus, hearsay." *Bean*, 561 F. Supp. 3d at 919 (citing *United States v. Brock*, 667 F.2d 1311, 1315 n.2 (9th Cir. 1982)). Here, as in *Bean*, none of the conduct shown in the video was intended as communication to the camera. The camera merely captured Plaintiff, other shoppers, and employees going about their business, and eventually, Plaintiff's slip and fall. "As such, the conduct portrayed by the surveillance video is not a statement and therefore not hearsay."[3] *Id.* at 920.

Additionally, the Court rejects Plaintiff's authenticity objection at this stage. "Rule 56 no longer requires strict authentication of all exhibits." *Chase Mfg., Inc. v. Johns Manville Corp.*, 601 F. Supp. 3d 911, 921 (D. Colo. 2022), *affirmed in part, reversed in part and remanded on other grounds*, *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1162 (10th Cir. 2023); *see* 10A Wright & Miller et al., Federal Practice & Procedure § 2722 (4th ed. 2021) (explaining that, prior to the 2010 amendment to the Federal Rules, Rule 56 required that "an exhibit could be used on a summary-judgment motion only if it were properly made part of an affidavit," but that this requirement was eliminated in the amendments); *see also Vanderlaan v. Ameriprise Auto and Home Ins.*, 2021 WL 4439875, at *2 n.6 (D. Colo. Sept. 27, 2021) ("The issue of authentication of exhibits in summary judgment briefing is not the same as admissibility at trial.").

"To be sure, there exist legitimate evidentiary objections, including authenticity objections, that a party might raise against summary judgment evidence. But, unless 'apparent

---

[3] Additionally, even *if* the conduct depicted by the video *is* hearsay, it is almost certainly subject to the business records exception to the hearsay rule. *See Delpriore v. McClure*, 424 F. Supp. 3d 580 (D. Alaska Jan 3, 2020) (considering security video footage on summary judgment under the business records exception).

from the context,' the objection must 'state[ ] the specific ground,' Fed. R. Evid. 103(a)(1)(B), or in other words, explain why the proponent of the evidence will have no way of authenticating it at trial." *Sec. & Exch. Comm'n v. Mahabub*, 2017 WL 6555039, at *2 (D. Colo. Dec. 22, 2017). Here, Plaintiff fails to put forward any specific basis for her authenticity objection—she merely states that the video is unauthenticated without explaining why Defendant will not be able to authenticate it at trial. Moreover, it appears highly likely that Defendant will be able to authenticate the security footage, simply through the testimony of a Walmart employee with personal knowledge of the system. (*See generally* Doc. No. 25 ("The security footage is admissible because Defendant anticipates providing appropriate authentication through a Walmart representative with personal knowledge of the video collection.").) At best, Defendant's "decision not to attach its [security footage] to any declaration or affidavit authenticating [it]" may have been ill-advised, but not enough for the Court to discount it. *Digital Advert. Displays, Inc. v. Newforth Partners, LLC*, 2014 WL 1292931, at *3 (D. Colo. Mar. 31, 2014). Accordingly, and for summary judgment purposes, the Court considers the security camera footage.[4]

---

[4] Of course, the mere fact that Defendant's video evidence is being considered does not necessarily mean the Court credits Defendant's version of events. To the contrary, "[i]f the recording does not clearly depict an action, and the evidence can reasonably be interpreted to support either party's version of what happened, [the Court] would need to credit [the non-movant's] version" of events. *Est. of Harmon v. Salt Lake City*, 134 F.4th 1119, 1122 (10th Cir. 2025) (cleaned up) (quoting *Baca v. Cosper*, 128 F.4th 1319, 1324 (10th Cir. 2025)). Said another way, the Court considers the video evidence, but views it in the light most favorable to Plaintiff. *See Bond v. City of Tahlequah*, Oklahoma, 981 F.3d 808, 813 (10th Cir. 2020) ("Because this is an appeal from a grant of summary judgment, we describe the facts viewing the video in the light most favorable to the Estate, as the nonmoving party."), *cert. granted, judgment rev'd on other grounds*, 595 U.S. 9, 142 (2021). *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**II.     Defendant's Motion**

"In a slip and fall case in Colorado, 'an invitee may recover for damages by proving (1) the landowner actually knew or should have known of the danger and (2) unreasonably failed to exercise reasonable care to protect the invitee from that danger.'" *Oliver v. Dollar Tree Stores, Inc.*, 2022 WL 18024717, at *2 (D. Colo. Dec. 30, 2022) (quoting Colo. Rev. Stat. § 13-21-115(3)(c)(I)). With respect to knowledge, that element "can be satisfied by either actual or constructive knowledge." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 568 (Colo. 2008).

**A.  Notice**

Here, the parties agree that Plaintiff slipped on clear liquid near the pharmacy counter. They also appear to agree that no Walmart employee *actually knew* the floor in that area was wet at the time Plaintiff fell. (*See* Doc. No. 25-1 at ¶ 8.) Thus, to prove a PLA violation, Plaintiff must first prove Defendant had constructive knowledge of the wet floor, prior to Plaintiff slipping and falling.

"Under Colorado law, 'constructive knowledge' is 'knowledge that one exercising reasonable diligence should have.'" *Clemmons v. FC Stapleton II, LLC*, 485 F. App'x 904, 908 (10th Cir. 2012) (quoting *id.* at 571). Additionally, "a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered." *Lombard*, 187 P.3d at 571; *see also Miller v. Crown Mart, Inc.*, 425 P.2d 690, 692 (1967) ("[T]he length of time for which the condition has existed is still one of the 'most important' factors to be considered in connection with the question of

8

constructive notice."). Put simply, the longer a condition existed, the more likely it is a landowner should have known of its existence. *See Clemmons v. FC Stapleton II, LLC*, 485 F. App's 904, 909 (10th Cir. 2012) (considering whether a hazard "existed for a sufficient period of time to put the defendant on notice that it needed to repair it or warn customers of it").

Here, Defendant claims the condition existed for just under five minutes because the security video shows the unknown customer knocking over her cup full of clear liquid, then picking up the cup, reacting as though her hand or the cup was wet, and examining the floor under her cart. (Doc. No. 20 at 4.) Plaintiff counters that several things are not clear from the video, including that the item pulled out of the cart by the unknown customer is a cup, that the customer reacted as though her hand or the cup was wet, or that any liquid was spilled onto the floor by this unknown shopper. (Doc. No. 22 at 5.) Plaintiff also notes that at one point, a "used tissue was dropped on the floor" and "then kicked to the area where plaintiff slipped." (*Id.* at 6.) She also contends that certain "items" appear on the floor at various points in the video. (*Id.*) Plaintiff also complains the video is "jumbled and glitches for about 17 minutes from approximately 5:54:00 to 6:11:00," and she notes that a dog walked through the area multiple times. (Doc. No. 22 at 5.)

Presumably, Plaintiff is suggesting that something else *could have* made the floor wet before the unknown shopper dropped the alleged cup (which means the duration of the condition might have been longer than Defendant contends). But Plaintiff does not expressly make this contention, nor does she otherwise explain how the floor became wet, nor does she specify when the floor became wet. Moreover, the footage submitted to the Court starts at 6:35:00, and Plaintiff's citations to earlier video footage are unsupported. (*See e.g.,* Doc. No. 22 at 5 (citing to

9

6:02:28 time stamp).)[5] In other words, Plaintiff falls far short of proving (or even articulating) some alternate theory for how the floor became wet.[6] However, at this stage, it is Defendant's burden to show the evidence "is so one-sided" that Defendant *must* prevail as a matter of law on *the entire claim,* not just one aspect of it. *See generally Carey*, 812 F.2d at 623. And while the video makes it practically impossible to dispute the *duration* of the spill in question, duration is not the only consideration:

> the length of time for which the condition has existed, though important, is not the only factor to be considered. In order words, this is not an issue which can be resolved solely on the basis of a stop watch reading and on the contrary can only be resolved after a consideration of all the facts and circumstances of the case at hand.

*Miller*, 162 Colo. at 285. A proper analysis must consider duration in the context of a larger question, which is whether the condition was "of such a nature that, in the exercise of reasonable care ... [it] should have been discovered." *Lombard*, 187 P.3d at 571.

Here, the puddle of liquid was out in the open and in an area with relatively consistent traffic—the pharmacy queue. Additionally, the parties agree that multiple Walmart employees were working in the pharmacy, which directly faced the unknown shopper when she spilled the liquid, and which directly faced the liquid itself. Were those working at the pharmacy counter

---

[5] Defendant initially submitted a more extended version of the footage, but the file was apparently corrupted, and court IT staff was unable to upload the video file for viewing. (Doc. No. 21.) At the Court's direction, Defendant submitted a new USB drive with the video file. (Doc. No. 27.) This USB drive included the shorter version of the security footage rather than the extended version. Thus, the Court has never had an opportunity to review the extended version.

[6] The Court pauses here to note that the video evidence appears quite clear on duration and Plaintiff will have to present meaningful evidence to overturn the logical—and practically obvious—conclusion from the video: Plaintiff slipped on the liquid that was spilled by the unknown shopper in the very same place just a few minutes before Plaintiff slipped in precisely the same location.

too busy to notice the liquid on the floor? Were their views obstructed? How did the texture and color of the floor impact the visibility of the spill? Did any of the other shoppers—whose witness statements were not taken—say anything that might have alerted employees to an issue? Answering these and other questions will require witness testimony, credibility determinations, and weighing of the evidence. The Court will not usurp the jury's role and conclude as a matter of law that Defendant did not have constructive knowledge of the spill.

### B. Reasonable Care

Next, the Court briefly addresses the question of reasonableness. Defendant advances three arguments: (1) that *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612 (Colo. App. 2003), compels a finding that it acted reasonably; (2) that it acted reasonably because it lacked actual notice of the spill; and (3) that Plaintiff cannot establish proximate causation. None of these arguments are persuasive.

In *Henderson*, the Colorado Court of Appeals affirmed summary judgment where the plaintiff failed to present sufficient evidence that the defendant's employee acted unreasonably. *Id.* at 616. There, the evidence suggested the defendant's employee noticed the spill and immediately went to retrieve a mop and caution sign. *Id.* By the time he returned three to five minutes later, the plaintiff had fallen and was laying on the ground. *Id.* The panel upheld the district court's order because the "[p]laintiff submitted no [admissible] evidence to suggest that the employee could have reacted more quickly or in a different manner." *Id.* Defendant contends that, because the spill here likely existed for less than five minutes, *Henderson* requires judgment in its favor.

Defendant overstates *Henderson*. It does not stand for the proposition that a spill's short duration, alone, precludes liability under the PLA. At best, *Henderson* demonstrates that where a defendant takes reasonable steps to address a hazard, it cannot be held liable simply because it was a few minutes too slow to complete those steps. Here, it is undisputed that Defendant took *no* steps to remedy the hazard. Thus, *Henderson* is distinguishable. But more importantly, it does not support the proposition that a short-lived hazard automatically warrants judgment as a matter of law.

Defendant's second and third arguments fare no better. Defendant contends it acted reasonably given its lack of actual notice. By collapsing the reasonableness argument into the notice argument, Defendant subjects them to the same fate—they are for the factfinder. Additionally, Defendant's attempt to decouple the causation analysis from the notice and reasonableness analysis, fails. Under the PLA, the causation question is whether the injuries were caused by Defendant's unreasonable failure to exercise reasonable care in the face of a known or knowable danger. Colo. Rev. Stat. Ann. § 13-21-115(4)(c)(I) ("[A]n invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers the landowner actually knew about or should have known about." In other words, the causation determination is inextricably intertwined with the central questions under the PLA—and in this case, the two primary questions for the jury—whether Defendant had constructive notice of the spill and whether it acted reasonably.[7]

---

[7] Of course, if Defendant could point to some intervening or more predominant cause for Plaintiff's injuries, it could realistically challenge causation. *See, e.g.*, *Vance v. El Paso Cnty. of Commissioners*, 2025 WL 1794685, at *2–8 (D. Colo. June 26, 2025) (dismissing a PLA claim connected to a mass shooting because the shooter's actions were "the predominant cause of

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment. (Doc. No. 20) is **DENIED**. It is further

**ORDERED** that Plaintiff's Unopposed Motion for Trial Date (Doc. No. 26) is **GRANTED**. An order setting trial and pretrial dates will be entered by separate order.

Dated this 21st day of August, 2025.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

Plaintiffs' injuries" and the landowner's "alleged omissions were not a substantial factor in, and therefore not the proximate cause of, Plaintiffs' injuries"). But this is not that type of case.

13